# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JOCELYN WATKINS,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No.: 2:11-CV-2380-VEH** |
| | ) |
| **FAIRFIELD NURSING AND** | ) |
| **REHABILITATION CENTER,** | ) |
| **LLC, et al.,** | ) |
| | ) |
|    **Defendants.** | ) |

## MEMORANDUM OPINION

Before the court is Defendant Fairfield Nursing and Rehabilitation Center, LLC's Motion To Dismiss (doc. 19); Defendant Birmingham Nursing and Rehabilitation Center East, LLC's Motion To Dismiss (doc. 22); Defendants LTK, LLC, D&N, LLC, and DTD HC, LLC's Motion To Dismiss (doc. 25); and the Motion To Dismiss filed by Defendant Aurora Cares, LLC d/b/a Tara Cares (doc. 30) (collectively, the "Motions"). Each Defendant argues that Plaintiff's claims against it should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), among other reasons. Plaintiff filed a consolidated response in opposition to the Motions (doc. 35), and Defendants filed a consolidated reply (doc. 44). Accordingly, the Motions are under submission and ripe for the

court's decision.

The court has studied the Complaint (doc. 1), the Motions, the parties' arguments, and the relevant case law.  For the reasons explained below, the court finds that the Complaint fails to state a claim upon which relief can be granted; therefore, the Motions are due to be granted.

**I.     Background**

Plaintiff Joycelyn Watkins ("Plaintiff") filed her Complaint on June 30, 2011, raising one count against the Defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  (Doc. 1).  After describing the various entities and individual[1] sued, Plaintiff explained that "[w]ithin this Complaint, all named Defendants are referred to collectively a[s] 'Defendants' unless otherwise noted."  (Doc. 1 ¶ 10).  She further alleges that "[t]he Defendants are employers as defined by Title VII at all times relevant to the claims made in this Complaint," and that the "Defendants employed at least 15 persons" during the times relevant to her Complaint.  (Doc. 1 ¶ 11).

Plaintiff alleges that she worked at the Fairfield Nursing and Rehabilitation Center, LLC ("Fairfield NRC") and at the Birmingham Nursing and Rehabilitation

---

[1] The only non-entity Defendant sued is William Tyson, who "is being sued in his individual capacity as well as his capacity as Executive Director of Fairfield NRC."  (Doc. 1 ¶ 9).

Center East, LLC ("Birmingham NRC"). (Doc. 1 ¶ 4). She further alleges that she worked at the Fairfield NRC for about eighteen (18) years before she was suspended, and, ultimately, terminated from her position. (Doc. 1 ¶ 13).[2] She contends that her suspension and termination was a result of her reporting a situation that involved "an inappropriate romantic and/or sexual relationship" between the Executive Director of the Fairfield NRC and "one or more of the female facility members." (Doc. 1 ¶¶ 17-24). She states that she learned of the inappropriate relationship(s) on or about October 1, 2010. (Doc. 1 ¶ 17). She also alleges that the inappropriate relationships led to "special privileges" and lack of discipline concerning the women who were allegedly romantically involved with the Executive Director, citing several instances of unequal treatment between those women and the other facility staff members. (Doc. 1 ¶ 18-19).

Plaintiff alleges that she reported the inappropriate relationship(s) to the director of nursing and to a person in the human resources department in "accordance with the provisions of the employee handbook." (Doc. 1 ¶ 20). Subsequently, "Plaintiff was summoned to the Executive Director's office where she was interrogated, berated, and harshly questioned by the executive director and the

---

[2] Plaintiff's Complaint is unclear as to which dates she worked at which facility, but it does indicate that she worked at the Birmingham NRC "[i]n 2010." (Doc. 1 ¶ 14).

director o[f] nursing concerning her knowledge of facts and events." (Doc. 1 ¶ 21). After that meeting, she alleges she was "suspended pending further investigation." (Doc. 1 ¶ 21).

The following day, Plaintiff alleges she was again summoned to the Executive Director's office "at which time she was confronted by representatives of the owners of the facility, the named Defendants." (Doc. 1 ¶ 22). Again, she alleges she "was berated, harshly questioned and accused of falsifying information, accused of wrongdoing and disciplinary violations." (Doc. 1 ¶ 22). Then "[s]he was written up with a disciplinary report, and was again informed that she would be suspended indefinitely." (Doc. 1 ¶ 22). Plaintiff alleges that this meeting led to her also being suspended from her "second job" at Birmingham NRC, which she alleges is owned and operated by the same entities as the Fairfield NRC. (Doc. 1 ¶ 23).

Ultimately, Plaintiff alleges she was "never called back to work" and therefore was "discharged, terminated and [/] or constructively terminated as a result of her suspension." (Doc. 1 ¶ 24). After her suspension, Plaintiff filed a formal complaint with the "EEOC" on October 12, 2010, alleging sex discrimination and retaliation. (Doc. 33, Ex. A). She alleges that she "received her right to sue, and has filed [her] Complaint within 90 days of receipt of the letter." (Doc. 1 ¶ 3).

Plaintiff's singular claim for relief is styled as "Count One / Title VII." (Doc.

1 at 7). Although the count, as alleged, is rather ambiguous as to what *type* of Title VII claim it is asserting, the Complaint read in conjunction with the Plaintiff's briefing in response to the Defendants' motions to dismiss implicates a claim for retaliation only. *Compare* Doc. 1 ¶¶ 26, 30 (alleging that Plaintiff was discriminated against "because of her sex <u>and/or</u> because of actions in reporting violations of Title VII in her workplace" (emphasis added)) *with* Doc. 1 ¶ 33 (alleging that "Plaintiff's suspension and termination was <u>in retaliation for</u> her reporting violations of Title VII") (emphasis added)) *and* Doc. 1 ¶ 34 ("The Plaintiff was <u>retaliated against</u> in violation of Title VII, as amended, by her suspension and termination . . . .") (emphasis added)); *see also* Pl's Consol. Resp. In Opposition to Mots. To Dismiss of Defs., Doc. 36 at 6-8 (responding to failure to state a claim arguments only in relation to Title VII retaliation claim). Therefore, the court reasonably construes the sole count in Plaintiff's Complaint as raising a claim for Title VII retaliation.

## II.     Standard of Review

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of her entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47). However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). The court therefore "accept[s] as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Thus, "[a] district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth --- legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d at 709-10.

### III. Analysis

Defendants raise various arguments for dismissal of Plaintiff's Complaint in their Motions. However, a common argument of all the Defendants is that Plaintiff failed to state a claim upon which relief can be granted, requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court agrees; therefore, it does not reach the Defendants' various alternate grounds for dismissal. Further, because of the court's view that Plaintiff's Complaint only seeks to raise one count and that appears to be for retaliation only, the court need not address the Defendants'

additional arguments that the Complaint fails to state claims for sexual harassment or gender discrimination.

To establish a *prima facie* retaliation claim under Title VII, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-70 (2006)). There are two basic types of retaliation claims based on the language of Section 704(a) of Title VII: claims brought under the "participation" clause and claims brought under the "opposition" clause.[3] The Eleventh Circuit distinguished between opposition versus participation-based protected activity in *E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171 (11th Cir. 2000):

> The statutory retaliation provision has two distinct components. Both

---

[3] The language of the relevant Title VII provision protecting employees against retaliation from their employers reads as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency . . . to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, <u>because he has opposed any practice made an unlawful employment practice by this [title]</u>, or <u>because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]</u>.

42 U.S.C.A. § 2000e-3(a) (emphasis added).

>offer employees some protection, but that these two components should offer two different levels of protection is consistent with the plain reading and purposes of the statute. The participation clause includes activity done in connection with proceedings conducted by the federal government and its agencies: an employee has invoked the jurisdiction of the federal government through its agency, the EEOC. And we have held that expansive protection is available for these adjudicative kinds of proceedings run by the government. *See Pettway*, 411 F.2d at 1007.
>
>Opposition clause acts, however, are taken outside of the context of a government review and, instead, are taken in the context of the ordinary business environment and involve employers and employees as employers and employees. As in this case, whether to fire an employee for lying to the employer in the course of the business's conduct of an important internal investigation is basically a business decision; this decision, as with most business decisions, is not for the courts to second-guess as a kind of super-personnel department. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (noting that court is not concerned with whether employment decision was prudent or fair but only with whether it was motivated by unlawful discriminatory animus).

*Total System*, 221 F.3d at 1175-76 (footnote omitted). In this case, the court concludes that Plaintiff's claim arises under the opposition clause rather than the participation clause because her complaints were rendered internally to in-house personnel apart from and before her filing of a formal charge with the EEOC. *See id.* at 1174 ("Th[e participation] clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; <u>it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC</u>." (emphasis added)).

9

To satisfy the opposition clause, a plaintiff need not prove that the practice opposed actually violated Title VII in order to recover for retaliation. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001) ("Lipphardt was not required to prove that Knuth's behavior legally constituted harassment in order to recover for retaliation." (citing *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1058 (11th Cir. 1999)). However, the plaintiff must demonstrate that she had both a subjective and objective "reasonable belief" that the opposed employment practice was unlawful. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998).

> A plaintiff engages in "statutorily protected activity" when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956, 960 (11th Cir. 1997). <u>However, it is insufficient for a plaintiff "to allege his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable."</u> *Id.*

*Id.* (emphasis added). In determining the reasonableness of the plaintiff's belief of unlawful conduct, the court must consider preexisting case law. *See id.* at 1388-89; *Lipphardt*, 267 F.3d at 1187 ("The belief must also be measured against substantive law at the time of the offense." (quoting *Little*, 103 F.3d at 960)). Moreover, the plaintiff is charged with knowledge of the substantive law. *Harper*, 139 F.3d at 1388

10

n.2 ("If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge."); *Sherk v. Adesa Atlanta, LLC*, 432 F. Supp. 2d 1358, 1370 (N.D. Ga. 2006) ("The court measures the objective reasonableness of an employee's belief against existing substantive law and, accordingly, charges the plaintiff with substantive knowledge of the law.").

Based on this legal framework for retaliation claims under Title VII's opposition clause, Plaintiff's Complaint, as alleged, contains an incurable problem. Plaintiff alleges that she reported instances of unequal treatment of staff and favoritism resulting from a suspected "romantic and/or sexual relationship" between her superior and one or more of the subordinate staff members. (Doc. 1 ¶¶ 17-24). Although this behavior may be inappropriate and in contravention of company policy, it does not rise to the level of discrimination outlawed by Title VII. The cases cited by the Defendants conclusively demonstrate that the factual allegations of Plaintiff's Complaint concerning paramour favoritism in the context of third-party inter-office relationships are insufficient to state claims for gender discrimination and/or sexual harassment under Title VII. *See, e.g., O'Patka v. Menasha Corp.*, 878 F. Supp. 1202, 1206 (E.D. Wis. 1995) (citing a "mound of caselaw" demonstrating that "cases based on favoritism to a third-party paramour do not state Title VII claims of sex

discrimination"). As the Defendants observe in their Motions:

> The Eleventh Circuit, as well as the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth and Tenth Circuits, have all held that allegations of favoritism to a third-party paramour do not state a claim under Title VII for sex discrimination. *Womack v. Runyon*, 147 F.3d 1298, 1301 (11th Cir. 1998); *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 308 (2d Cir. 1986); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990); *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996); *Ackel v. Nat'l Communications., Inc.*, 339 F.3d 376, 382 (5th Cir. 2003); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1353-54 (7th Cir. 1995) (in dicta); *Thomson v. Olson*, 866 F. Supp. 1267, 1272 (D. N.D. 1994), *aff'd*, 56 F.3d 69 (8th Cir. 1995); *Keenan v. Allan*, 889 F. Supp. 1320, 1375 n.66 (E.D. Wa. 1995), *aff'd*, 91 F.3d 1275 (9th Cir. 1996) (in dicta); *Taken v. Oklahoma Corporation Commission*, 125 F.3d 1366, 1370 (10th Cir. 1997); *see also Delucca v. Ikon Benefits Group, Inc.*, 2011 U.S. Dist. LEXIS 28919, *15-*18 (D.P.R. 2011) ("In the absence of First Circuit authority, and given the weight and correctness of Circuit authority, this Court considers Plaintiff's claim is not cognizable under Title VII."); *Mair v. Napolitano*, 2011 U.S. Dist. LEXIS 143572, *12-*13 (W.D. Mich. 2011) (" Unfortunately for Plaintiff, those holding traditional family values are not a protected class under Title VII, nor does a supervisor's preferential treatment of a paramour or drinking buddy constitute discrimination under the statute"); *Johnson v. Heymann*, 2000 U.S. Dist. LEXIS 12785, *20-*23 (D.D.C. 2000) (dismissing plaintiff's sex discrimination because it was based on paramour favoritism).

(Doc. 20 at 7-8; Doc. 23 at 12-13; Doc. 26 at 16-17; Doc. 31 at 12-13). These cases are directly on point and Plaintiff fails to rebut them.

Most significantly, the *Womack* decision clearly establishes precedent in the Eleventh Circuit addressing "whether preferential treatment based on a consensual relationship between a supervisor and an employee constitutes a cognizable sex

discrimination cause of action under Title VII." 147 F.3d at 1299. Squarely addressing the same issue implicated in this case, the Court of Appeals in *Womack* affirmed the district court's "conclu[sion] that Title VII does not encompass a claim based on favoritism shown to a supervisor's paramour." *Id.* at 1300-01. In reaching this conclusion, the Eleventh Circuit relied on the Second Circuit's *DeCintio* opinion (cited by the Defendants in their briefs) as the "leading case in the area," as well as cases from five other circuits to show that "the great majority of courts which have addressed this question have reached the same result." *Id.* at 1300 (citing cases). The Eleventh Circuit also looked to the following guidance from the EEOC:

> The Equal Employment Opportunity Commission, which is charged with enforcing Title VII, has also reached the same conclusion. In a policy guidance letter issued in 1990, the agency opined that "<u>Title VII does not prohibit ... preferential treatment based upon consensual romantic relationships. An isolated instance of favoritism toward a 'paramour' ... may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders</u>." *See* EEOC Policy Guidance on Employer Liability Under VII for Sexual Favoritism, EEOC Notice No. 915–048 (January 12, 1990).

*Id.* (emphasis added).

In light of this clear law in the Eleventh Circuit, a district court in the Northern District of Georgia, facing strikingly similar fact allegations concerning a Title VII retaliation claim, dismissed the claim after concluding that the plaintiff "did not have

13

a reasonable belief that her employer had violated the law." *Sherk*, 432 F. Supp. 2d at 1370. Similar to this case, the plaintiff in *Sherk* alleged unlawful retaliation by her employer after reporting "preferential treatment" and "favoritism" toward a female employee because of her sexual relationship with the supervisor. *Id.* The plaintiff equated this activity to sexual harassment and a hostile work environment in her EEOC complaint. *Id.* at 1367. However, the court aptly explained that Title VII is not designed to protect against the type of activity reported by the plaintiff:

> Title VII seeks to eliminate discrimination in employment based on differences of race, color, religion, sex, or national origin. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 n. 6, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977). By using the word "sex", Congress sought "to strike at the entire spectrum of disparate treatment of men and women." *Taken*, 125 F.3d at 1369–70 (citing *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n. 13, 98 S. Ct. 1370, 55 L. Ed. 2d 657 (1978)). "Sex" in Title VII, therefore, refers "to membership in a class delineated by gender" and proscribes "distinction[s] based on a person's sex, not his or her sexual affiliations." *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 306–07 (2nd Cir. 1986); see also Taken, 125 F.3d at 1369–70 (citing cases); *Drinkwater*, 904 F.2d at 860. However, when a supervisor gives favorable treatment to his paramour, every other employee "with whom he is not having sex" experiences the resultant discrimination or harassment, regardless of their gender. (Compl., ¶ 10). *Taken*, 125 F.3d at 1370; *DeCintio*, 807 F.2d at 308; *O'Patka v. Menasha Corp.*, 878 F. Supp. 1202, 1206 (E.D. Wis. 1995). Favoritism of a paramour, therefore, while perhaps unfair, "is gender neutral and 'more akin to nepotism' than sexism." *Elger*, 6 F. Supp. 2d at 1353 (citing *Ayers*, 826 F. Supp. at 445).

*Id.* at 1370-71. After discussing the Eleventh Circuit's *Womack* decision and the

14

cases cited within, the court rejected the plaintiff's argument that she had an objectively reasonable belief that she reported unlawful activity and held as follows:

> Nevertheless, Plaintiff argues that she had an objectively reasonable belief that Mr. Rush's conduct violated the law because "Defendant's own ethics handbook makes the causal connection between sexual relationships...and the resultant sexual harassment" and because Defendant quickly disciplined her each time she complained about Mr. Rush's and Ms. Cody's relationship on baseless grounds. (Pl. Resp., at 17–18). Both these arguments fail, however, because Plaintiff is charged with knowledge of the substantive law. *See Harper*, 139 F.3d at 1388. <u>Armed with clear holdings from the Eleventh Circuit as well as numerous other courts that favoritism is gender-neutral, a reasonable person would not conclude that her supervisor's favoritism for his paramour violated Title VII because her employer had adopted a more restrictive policy in its ethics handbook and had disciplined her quickly for complaining about the relationship</u>.

*Id.* at 1372 (emphasis added).

The *Sherk* case is instructive because of its similarity. However, here, Plaintiff does not even attempt to argue that she had a reasonable *objective* belief that the activity she reported was unlawful, though she recognizes the objective component as one of the elements of her claim. (See Doc. 36 at 6 (citing *Little*, 103 F.3d at 960)). Instead, Plaintiff only argues that she "had a *subjective*, good-faith belief that the relationship between the Executive Director and the staff member, as well as the resulting actions taken by the Executive Director was in fact prohibited and unlawful employment practices." (Doc. 36 at 7 (emphasis added); *see also id.* at 8 (arguing

that "she has sufficiently alleged a good faith subjective belief that she was reporting actual unlawful employment practices")). However, allegations of subjective good faith belief is not enough to plausibly state her claim for Title VII retaliation. Reading between the lines, even if Plaintiff is attempting to argue that her belief was objectively reasonable based on Fairfield NRC's employee handbook definition and policy concerning "harassment" (see Doc. 36 at 7), that argument is not enough because, as the court in *Sherk* concluded, Plaintiff is charged with knowledge of the substantive law. *Sherk*, 432 F. Supp. 2d at 1372.

Based on the overwhelming unanimity with which the courts (including the Eleventh Circuit) have declared paramour favoritism to be gender-neutral and not violative of Title VII, Plaintiff's subjective belief (even if in good faith) that the Defendants violated the law, as alleged in her Complaint, cannot be objectively reasonable as a matter of law. *Accord Harper*, 139 F.3d at 1388 ("The reasonableness of the plaintiffs' belief in this case is belied by the unanimity with which the courts have declared grooming policies like Blockbuster's non-discriminatory."); *Sherk*, 432 F. Supp. 2d at 1370 (holding that plaintiff's subjective belief that supervisor's favoritism toward paramour violated Title VII was not reasonable in light of overwhelming case law to the contrary); *O'Patka*, 878 F. Supp. at 1209 (same). The objectively reasonable element of Plaintiff's retaliation

16

claim cannot be overlooked, even at this early stage of litigation. As the Eleventh Circuit has noted:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little*, 103 F.3d at 960 (emphasis in original).

Accordingly, following the guidance of the above-cited cases, the court concludes that it is appropriate for the court to dismiss Plaintiff's claims for failure to state a claim based on her incurable inability to demonstrate a "reasonable belief" that the opposed employment practice was unlawful. *See Harper*, 139 F.3d at 1388 (dismissal for failure to state a claim); *Womack*, 147 F.3d at 1301 ("Based on the foregoing, we conclude that the district court correctly dismissed Womack's complaint for failure to state a claim."); *O'Patka*, 878 F. Supp. at 1202 (granting motion to dismiss for failure to state a claim). Moreover, because Plaintiff *could not* plausibly state a claim even if the court *sua sponte* ordered repleader, the court will grant the Defendants' request to dismiss her claims with prejudice.

**IV. Conclusion**

In sum, because Plaintiff could not, as a matter of law, have had a reasonable belief that the conduct she alleges in her Complaint violated Title VII, she cannot establish a *prima facie* case of retaliation and her claim is due to be dismissed. Accordingly, the Defendants' Motions are due to be granted. A separate order to this effect will be entered.

**DONE** and **ORDERED** this the 26th day of April, 2012.

                                                                            *[signature]*
                                                **VIRGINIA EMERSON HOPKINS**
                                                United States District Judge